IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent/Plaintiff, | ) | |
| vs. | ) | No. 3:04-CR-0321-G (01) (BH) |
| | ) | No. 3:06-CV-0201-G (BH) |
| NORMAN POTTS, ID # 32723-177, | ) | ECF |
| Movant/Defendant. | ) | Referred to U.S. Magistrate Judge |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Movant, a current inmate in the federal prison system, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to the provisions of 28 U.S.C. § 2255 to challenge his federal sentence in Cause No. 3:04-CR-0321-G. The respondent is the United States of America (government).

### B. Factual and Procedural History

On October 7, 2004, the government charged movant in a two-count information. The first count charged movant with possession of child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(5)(B). The second count subjected certain property to forfeiture upon conviction. Movant waived indictment and entered a plea of guilty. In a Factual Resume, he admitted that on or about January 21, 2004, he "knowingly possessed material containing approximately 345 images of child pornography that had been transported in interstate and foreign commerce by com-

puter, which include visual depictions of prepubescent minors engaged in sexually explicit conduct . . . and visual images that are sadistic and depictions of violence." Additionally, he "admitted to using the internet to download images of child pornography on his home computer." He used his computer and a compact disc in the commission of the charged offense.

A probation officer ("PO") completed a Presentence Report ("PSR") from information provided by movant and independent investigation. The PO described movant's offense conduct as including three subscriber access purchases between February and April 2003 from internet sites containing child pornography. Forensic analysis of movant's computers recovered five images from his work computer and approximately 345 images from his personal computer; some of the latter portrayed sadistic conduct or other depictions of violence. The PO re-stated movant's admissions contained in the Factual Resume regarding his possession of child pornography on January 21, 2004.

The PSR reflected movant's law enforcement background, including his employment with the Department of Homeland Security at the time of his arrest. It also reflected recorded personal and family data, including a dysfunctional childhood; siblings who work as federal correctional officers; a wife who works outside the home; and two children adopted from a drug addict – one with emotional problems. According to the PSR, movant "reported a history of mental and emotional illness" ranging from depression caused by his legal situation and an addiction to sex that "came to light as a result of the discovery of the offense." Movant's counselor verified movant's "addiction to Internet pornography, including some child pornography."

Because use of Guidelines Manual ("Sentencing Guidelines" or simply "Guidelines") in effect at the time of sentencing would "violate the 'ex post facto clause' of the U.S. Constitution", the PO used the November 1, 2003 Guidelines Manual that was in effect on the date movant committed

the offense of conviction to calculate the sentencing range for movant. The PO calculated movant's offense level to be twenty-six with a Criminal History Category I. The offense level was increased due to specific offense characteristics, including (1) a two-level increase because the offense involved possession of more than ten items containing child pornography (§ 2G2.4(b)(2)); (2) a four-level increase due to the sadistic or violent content (§2G2.4(b)(4)); and (3) a four-level increase because the offense involved more than 300 images (§ 2G2.4(b)(5)(C)).

In an Addendum to the PSR, the PO rejected five objections lodged by movant: (1) the five pictures found on his work computer were likely advertisements from opened e-mails and he was not the only person who had access to the work computer; (2) two of the five images on his work computer may be duplicates; (3) he did not possess more than ten items containing child pornography because he only possessed two computers and one compact disc with such images; (4) he did not actively seek sadistic or violent depictions; and (5) his offense involved fewer than 300 images if duplicates were not included. Only the latter two objections are relevant to this § 2255 action.

The PO recommended rejection of movant's fourth objection because intent is irrelevant to increasing the offense level for possession of sadistic or violent depictions, pursuant to an amendment to the Guidelines that became effective November 1, 2004. Relying on USSG § 1B1.11(b)(2), the PO justified using the later amendment because it provided clarification of the prior provision rather than making a substantive change.[1] With respect to the fifth objection, the PO relied on movant's stipulation that he possessed 345 images of child pornography in recommending that it be rejected.

---

[1] Although § 1B1.11(b)(2) directs the courts to apply the Guidelines in effect on a particular date in its entirety, the section further provides that "if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."

At movant's sentencing hearing held February 1, 2005, the Court adopted the recommendations in the Addendum to the PSR and in the original PSR to the extent not inconsistent with the Addendum. (Tr. at 4.) The Court also stated on the record that it had received and reviewed four letters from friends or family of movant. (*Id.* at 4-5.) Movant's therapist testified about movant's addiction to fantasy and pornography and his need for treatment. (*Id.* at 5-7.) Movant also testified as to his continuing need for treatment and how his incarceration would impact his daughter who has a detachment disorder. (*Id.* at 9-10.) He testified about efforts he made to assist law enforcement personnel in apprehending other sex offenders. (*Id.* at 12.) Although an Assistant United States Attorney confirmed movant's cooperation, she stated that the efforts were insufficient to recommend "a 5K downward departure." (*Id.* at 13-14.) With very limited reservations, she recommended a sentence at the lower end of the applicable sentencing range. (*Id.* at 14.)

The Court recognized that although *United States v. Booker*, 543 U.S. 220 (2005) (decided Jan. 12, 2005) made the Sentencing Guidelines advisory only, they still provided the appropriate starting point for determining the length of movant's sentence. (*Id.* at 15.) From the Guidelines, it computed a sentencing range of sixty-three to seventy-eight months imprisonment consistent with the PSR presented to it. (*Id.* at 15-16.) After considering the various factors set forth in 18 U.S.C. § 3553 and movant's particular situation as presented to it in the PSR as well as letters from family members, it concluded that "a sentence at the lower end of the guidelines is sufficient to achieve [the] objectives for sentence in this case." (*Id.* at 16-18.) In reaching that conclusion, the Court stated: "I cannot find anything in this record which seems to take this case out of the guidelines range, as hard as I think that is to say, and as sympathetic I am to Mr. Potts' situation both his personal situation and his family situation." (*Id.* at 17.) It pronounced a sixty-three month sentence

and indicated that it would recommend placement in an institution where movant could receive appropriate treatment for his sexual addiction. (*Id.* at 18, 22.) The Court also recommended that the placement decision take into account movant's "status as a former law enforcement officer and also the status of his two siblings as current officers in the Bureau of Prisons system." (*Id.* at 23.) On February 2, 2005, the Court entered judgment upon movant's plea and sentenced him to sixty-three months imprisonment. Movant did not appeal.

On February 1, 2006, the Court received the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 and later accepted a lengthy memorandum in support. Movant asserts that he is entitled to relief under § 2255 because he received ineffective assistance of counsel at and before sentencing. He also mentions that his attorney had "possible conflicts of interest." He does not challenge the validity of his plea. The government has filed a response in opposition to the motion to vacate with an affidavit from movant's defense attorney. Movant responded to the response with a reply brief and an affidavit from his wife attached to a motion for leave to expand the record. The government thereafter proffered a second affidavit from the defense attorney to respond to the wife's affidavit. Movant filed his own written declaration and a response to the government's second proffered affidavit. On or about May 15, 2008, movant filed a motion for summary judgment.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his motion to vacate, movant asserts that his trial attorney rendered ineffective assistance at and before sentencing, and that he received a harsher sentence as a result. (Mot. at 7-8; Mem.

---

[2] Movant purports to seek summary judgment because ineffective assistance of counsel led to impermissible double counting in the calculation of his Guidelines range. (Mot. Summ. J. at 1-5.) He requests to waive all other issues and asks the Court to issue an amended judgment reflecting a sentence of fifty-one months. (*Id.* at 5.) Because the issue raised in the motion for summary judgment is encompassed by movant's motion to vacate filed pursuant to 28 U.S.C. § 2255, the Court should deem the motion for summary judgment moot once it resolves the instant motion to vacate.

Supp. at 6-69.)  Movant also suggests that his attorney may have had a conflict of interest.  (Mot. at 8, Mem. Supp. at 66-69.)  In his reply brief, he suggests that he was constructively denied counsel when his attorney entirely failed to subject the prosecution's case to meaningful adversarial testing. (*See* Reply at 3.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of trial or appellate counsel, movant must generally demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  A failure to establish either of these prongs generally requires a finding that counsel's performance was constitutionally effective.  *Strickland*, 466 U.S. at 696.  However, when a defendant has been constructively denied counsel, the courts presume that he or she has been prejudiced, and no showing of prejudice is required.  *United States v. Cronic*, 466 U.S. 648, 659-60 (1984).  "Ineffectiveness is also presumed when counsel 'actively represented conflicting interests.'"  *Id.* at 661 n.28 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

## A.  Applicable Standard of Review

In view of movant's claims, the Court must first determine the appropriate standard for evaluating his claims of ineffective assistance of counsel.

### 1.  *Conflict of Interest*

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel,"

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). As previously mentioned, a defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice. *Id.* at 781-82. "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions: (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation." *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005). However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)." *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (en banc). The standard enunciated in

*Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See id.* at 1272. Whether a conflict of interest exists is a "highly fact-intensive" question that is dependent upon numerous factors. *Infante*, 404 F.3d at 392.

In this case, movant infers a conflict of interest from the following statements and actions of his attorney: (1) obtaining "limited discovery" from the prosecution; (2) not wanting to personally view the pornographic images; (3) showing no interest in movant reviewing the images and pointing out discrepancies; (4) having no real plan for the sentencing hearing and telling movant that "the best thing for you to do is go in there willing to take whatever the Judge decides to give you"; (5) telling movant that "[t]o be honest with you, if I weren't your attorney, I would want you to do some time for this, too"; (6) stating that he had once been under threat of prosecution because a client had absconded to Spain; (7) commenting on several occasions that he did not want "to piss off" the prosecution; and (8) not doing anything at sentencing other than asking five basic questions to movant's therapist and speaking when questioned by the judge. (Mem. Supp. at 66-68.) Movant has set forth no statement or action by counsel that exhibits a conflict of interest caused by multiple representation.

Accordingly, the Court finds no actual conflict of interest in this case. The *Strickland* standard of review applies unless movant can show that he was constructively denied counsel.

## 2. *Constructive Denial of Counsel*

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court recognized that a defendant might be constructively denied counsel although an attorney had been appointed to represent him. 466 U.S. at 654 n.11 ("[T]he performance of counsel may be so inadequate" as to constitute no assistance of counsel at all). A defendant is constructively denied counsel when his attorney "en-

tirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 659. However, unless there is a constitutional error of such magnitude that "no amount of showing of want of prejudice would cure" the error, "there is generally no basis for finding a Sixth Amendment violation" in the absence of a showing of "how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 & n.26. Furthermore,

> [c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Id.* at 659-60.

The presumed prejudice standard of *Cronic* is reserved for "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. The *Cronic* standard does not apply when defense counsel has merely failed to oppose the prosecution at specific points of the proceedings – it applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697 (2002). When counsel provides "some meaningful assistance", the *Cronic* standard is inapplicable. *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986). Movant has the burden to show that he was constructively denied counsel. *See Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

In this instance, movant has not carried his burden to show that he was constructively denied counsel. The record shows that defense counsel subjected the prosecution's case to meaningful adversarial testing. Among other things, defense counsel negotiated a plea with the government, filed objections to the PSR, and called a witness to testify on movant's behalf. Under these facts, counsel clearly provided more than "some meaningful assistance." The *Cronic* standard is thus

inapplicable, and movant must satisfy the two-part *Strickland* test in order to succeed on his claims.

### 3. *Strickland Test*

To satisfy the *Strickland* test for claims of ineffective assistance, movant must show a deficiency of counsel that prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient under *Strickland*, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the case of ineffective assistance at sentencing, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001). In other words, the movant must show that counsel's deficiencies created a reasonable probability that his sentence would have been less harsh. *See id.* at 200. Movants must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. The prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*,

466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## B. Specific Claims

Movant asserts that his attorney rendered ineffective assistance when he failed to (1) develop a strategic plan for sentencing, including conducting a reasonable pre-sentence investigation into matters that may have supported a downward departure; (2) adequately raise or argue objections to the application of certain sentencing guidelines set forth in the PSR; (3) alert the Court about *United States v. Booker*, 543 U.S. 220 (2005) or raise any concerns arising from that case; and (4) move or argue for a reduction of sentence from the applicable Guideline range. (Mot. at 7-8; Mem. Supp. at 6-69.) Because *Booker* changed the legal landscape with respect to sentencing in federal criminal actions, it impacts each alleged deficiency of counsel to some extent. Movant's *Booker* claims will therefore be addressed first.

### 1. *Booker*

Movant contends that his attorney rendered ineffective assistance by failing to raise any concern under *United States v. Booker*, 543 U.S. 220 (2005) or even alert the Court to the case. (Mot. at 7; Mem. Supp. at 66.)

In *Booker*, the Supreme Court invalidated "the statutory provision, 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines mandatory." *Gall v. United States*, 128

11

S. Ct. 586, 594 (2007). "The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing" as set forth in § 3553(a)(2).[3] *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). Not only must the courts consider the need for the imposed sentence as embodied in § 3553(a)(2), but they must consider a number of other factors, including

> "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*Id.* (citing § 3553(a)). Consequently, although *Booker* eliminated the mandatory nature of the Guidelines, "a sentencing court must still carefully consider the detailed statutory scheme created by [the Sentencing Reform Act of 1984 (SRA) and the Guidelines]". *United States v. Mares*, 402 F.3d 511, 518 (5th Cir. 2005). Nevertheless, "while the statute still requires a court to give respectful consideration to the Guidelines, *Booker* 'permits the court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 128 S. Ct. at 570 (quoting Booker, 543 U.S. at 245-46).

Since *Booker*, the courts in the Fifth Circuit have had three sentencing options: (1) impose a sentence within the properly calculated range of punishment assigned by the Guidelines; (2) depart from the Guidelines and impose a sentence above or below the Guideline range based upon a specified exception to the Guidelines; or (3) impose a non-Guidelines sentence, *i.e.*, a higher or lower

---

[3] Section 3553(a)(2) provides that, in determining the appropriate sentence to impose, the courts shall consider
(2) the need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

sentence that is "at variance with" the calculated Guidelines range. *See United States v. Rowan*, ___ F.3d ____, ____, No. 05-30536, 2008 WL 2332527, at *1 (5th Cir. June 9, 2008); *United States v. Mejia-Huerta*, 480 F.3d 713, 721 (5th Cir. 2007), *cert. filed*, 75 U.S.L.W. 3585 (Apr. 18, 2007); *United States v. Davis*, 478 F.3d 266, 273 (5th Cir. 2007); *Mares*, 402 F.3d at 519 & n.7.

In this post-*Booker* case, the Court appropriately recognized that the Guidelines were merely advisory. (Tr. at 15.) It found that "the starting point here is the guidelines themselves as advisory guidelines only and as computed in the pre-sentence report." (*Id.*) After noting that the Guidelines provide a sentencing range between sixty-three and seventy-eight months as calculated in the PSR, it considered the factors set out in § 3553(a) "in deciding whether to impose a sentence within the guidelines or outside the guidelines in this case." (*Id.* at 15-16.) Although it specifically recognized movant's personal and family situations, it found nothing in the record "to take this case out of the guideline range" despite its recognition "that the guidelines are no longer binding as they were before [*Booker*]." (*Id.* at 17.) It appears clear that the Court had no inclination to enter a non-Guidelines sentence at variance with the calculated Guideline range. It also appears clear that the Court found nothing in the record to justify departing upward or downward from the determined Guideline range.

Because the Court was well aware of *Booker* and appropriately sentenced movant pursuant to the advisory post-*Booker* sentencing scheme, counsel had no basis to alert the Court about *Booker* or to assert any *Booker* concerns. The failures to do so do not constitute deficient representation, and entitle movant to no relief in this § 2255 action.

### 2. *Sentencing Plan*

Movant alleges generally that his attorney demonstrated a lack of loyalty and advocacy. (Mot. at 8; Mem. Supp. at 66-69.) Such allegations focus on a failure of counsel to develop a

strategic plan for sentencing. (Mem. Supp. at 67.) This alleged failure of counsel includes complaints that his attorney obtained only limited discovery, did not discuss or review discovery with him, did not want to review the pornographic images, was absent from a PSR interview,[4] and failed to hold a pre-sentence conference with him or testifying witnesses. (*Id.* at 67-68.)

Movant also alleges that counsel failed to investigate because counsel (a) obtained no discovery related to the number and type of images found in his possession; (b) conducted no interview with his sex-addiction therapist; (c) obtained no or insufficient information regarding his family history, addiction history, diagnosis, prognosis, necessity of continued treatment, or effects of incarceration on his progress and treatment; (d) obtained no psychological diagnosis to assess his attraction to and use of child pornography; (e) conducted no interview of his supervisors and co-workers for information that "might have supported claims for susceptibility to abuse in prison or diminished capacity due to work-related stress, possible Post Traumatic Stress Disorder," and a fear of flying; and (f) failed to call his wife to testify at sentencing. (Mem. Supp. at 6-7.) He submits an affidavit from his wife to show that she would have provided testimony relevant to a downward departure for extraordinary circumstances. (*See* Aff. attached to Mot. Leave Expand Record.)

*Strickland* requires counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 687. "So long as counsel made

---

[4] Notably, the Federal Rules of Criminal Procedure do not require the presence of counsel at such interview. *See* Fed. R. Crim. P. 32(c)(2) (requiring that "on request" probation officers must "give the defendant's attorney notice and a reasonable opportunity to attend the interview"). In this instance, counsel had notice of the interview, but advised movant to proceed without him because he had a scheduling conflict. (*See* Mem. Supp. at 68.)

an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003) (quoting *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002)). To show prejudice from an alleged failure to investigate, a movant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of the proceeding. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Of course, in the sentencing context, the movant must demonstrate that the alleged failure to investigate created a reasonable probability that his sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice").

In this case, movant does not challenge the voluntariness of his plea. Because his voluntary plea waives all prior, non-jurisdictional defects in the proceedings below, *see United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983), movant's claims of ineffective assistance of counsel are limited to that time period after he voluntarily pled guilty on October 7, 2004. When he pled guilty, he also admitted to possessing 345 images of child pornography, including some that were sadistic or depicted violence. Such admission provides sufficient reason of itself to forego further investigation into the number and type of images. Counsel thus did not render deficient representation when he failed to obtain discovery related to the number and type of images found in his possession.

Moreover, for each of the alleged investigatory deficiencies of counsel, movant has shown no reasonable probability that his sentence would have been less harsh in the absence of the deficiency. He has presented nothing to show that further investigation of the listed matters would

have resulted in the application of a lower Guideline range, a downward departure from the calculated Guideline range, or a lower non-Guideline sentence at variance with the calculated Guideline range. Although the Court recognized that the Guidelines were advisory only, it found no reason to impose a lesser sentence. Nothing now before the Court creates a reasonable probability that the Court would have imposed a lesser sentence but for the alleged investigatory deficiencies of counsel. The alleged investigatory deficiencies do not entitle movant to relief in this § 2255 action.

The alleged general failure to develop a sentencing plan and the complaints against counsel therein likewise provide no basis for § 2255 relief. Such conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). Movant, furthermore, has not shown how any of these alleged deficiencies of counsel create a reasonable probability that he would have received a less harsh sentence in their absence. Without a showing of prejudice, these claims necessarily fail.

### 3. *PSR*

Movant claims that his attorney rendered ineffective assistance of counsel when he (a) failed to adequately argue his objection to the four-level increase to his offense level under § 2G2.4(b)(4) and (b) failed to object to impermissible double counting caused by increases to his offense level under § 2G2.4(b)(2) and § 2G2.4(b)(5)(C). (Mem. Supp. at 52-61.)

#### a. **Section 2G2.4(b)(4)**

Movant contends that his attorney failed to adequately argue against the four-level increase under § 2G2.4(b)(4) because his attorney did not research or cite case law that establishes an intent or mens rea requirement for possession of sadistic or violent images of child pornography. (*Id.* at 52-

58.)  Relatedly, he contends that his attorney did not show that amendments to the Guidelines which resolve a circuit split, or that disadvantage the defendant, should not be applied retroactively because they are considered "substantive" rather than "clarifying" amendments.  (*Id.*)  He suggests that application of the 2004 amendment in his case constitutes an ex post facto violation.  (*Id.*)

More than a decade ago, the Fifth Circuit recognized that an increase in offense level based upon possession of sadistic or violent depictions of child pornography is premised on an intent to possess such materials.  *See United States v. Kimbrough*, 69 F.3d 723, 734 (5th Cir. 1995).  However, by amendments to the Guidelines that became effective on November 1, 2004, the Sentencing Commission added "an application note to make clear that the specific offense characteristic for material portraying sadistic or masochistic conduct applies regardless of whether the defendant specifically intended to possess, receive, or distribute such material."  *See* USSG § App. C at 60 (Supp. Nov. 2004) (setting out Am. 664).  The amendment specifically cited *Kimbrough*, recognized that "[t]he circuit courts have disagreed regarding whether a defendant must have specifically intended to receive the sadistic or masochistic images", and followed a Seventh Circuit opinion that was contrary to *Kimbrough*.  *Id.*

Subsequent to Amendment 664, the Fifth Circuit has twice faced the issue of intent with respect to increasing a defendant's sentence for offenses involving material that portrays sadistic or violent depictions.  Most recently, the Fifth Circuit stated without reference to the 2004 amendments that in light of *Kimbrough*, "this circuit requires a showing of either reckless disregard or intent for sentencing enhancements under U.S.S.G. §§ 2G2.2(b)(1) and 2G2.2(b)(3)."[5]  *United States v.*

---

[5]  The 2004 amendments deleted § 2G2.4 and consolidated it with § 2G2.2.  As set forth in the 2003 Guidelines, both § 2G2.2(b)(3) and § 2G2.4(b)(4) provided for a four-level increase to offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."

*Perez*, 484 F.3d 735, 744-45 (5th Cir. 2007) (addressing a defendant who was sentenced in December 2005 for an offense that occurred prior to the November 2004 amendments). In a case decided just prior to *Perez* that involved an offense which occurred on an unspecified date in 2004, the Fifth Circuit declined to resolve the issue of whether "the sadistic-image enhancement . . . has an intent requirement that was met" because it found no error in the sentence even if intent was necessary. *See United States v. Nikonova*, 480 F.3d at 371, 375 (5th Cir. 2007).

Like the parties in *Nikonova*, the parties here devote substantial argument as to whether intent is necessary before the Court can increase movant's offense level under § 2G2.4(b)(4). The government contends that because the clarification within the 2004 amendments controlled at the time of movant's sentencing, counsel could not make a meritorious objection to the application of the § 2G2.4(b)(4) increase. Movant, on the other hand, characterizes the 2004 amendments as substantive rather than merely clarifying and argues that the 2004 amendments should not apply to his case.

While *Perez* provides recent support for movant's position, the Court need not determine whether intent was required or whether the application of the 2004 amendments involves an ex post facto violation. If the Court properly increased the offense level without a showing of intent, there was simply no deficiency of counsel relative to the § 2G2.4(b)(4) increase. On the other hand, if a showing of intent was required, and the Court assumes a deficiency of counsel with respect to failing to adequately argue intent and improper retroactive application of the 2004 amendments, the claim fails because movant provides nothing to show that the government could not satisfy its burden to show intent had it been required to do so. To show prejudice in this context, movant must not only show a reasonable probability that his attorney could have convinced the Court that

a showing of intent was required and that it should not apply the 2004 amendments, but also a reasonable probability that the government would have been unable to carry its burden with respect to intent. Because movant has not carried the latter burden, he has shown no reasonable probability that he would have been sentenced less harshly had his attorney adequately argued his objection to the § 2G2.4(b)(4) increase. This alleged deficiency of counsel provides no basis for relief in this § 2255 action.

### b. Sections 2G2.4(b)(2) and 2G2.4(b)(5)(C)

Movant contends that his attorney rendered ineffective assistance by raising no objection to the use of both § 2G2.4(b)(2) and § 2G2.4(b)(5)(C) to increase his offense level. (Mem. Supp. at 59-61.) He argues that enhancing his offense level by two for possession of ten or more items of pornography under § 2G2.4(b)(2) and by four for possession of more than three hundred images under § 2G2.4(b)(5)(C) constitutes impermissible double counting. (*Id.*)

Section 2G2.4(b)(5) "was enacted in the 2003 PROTECT Act, which failed to address, and thus left undisturbed, its predecessor from 1991, § 2G2.4(b)(2)." *United States v. Gonzalez*, 445 F.3d 815, 817-18 (5th Cir. 2006). The new section became effective on April 30, 2003, and "comprises a graduated schedule of enhancements based on the number of images involved." *Id.* at 818 n.5. Because the PROTECT Act failed to address § 2G2.4(b)(2), the 2003 version of the Sentencing Guidelines specifically includes a two-level increase to a defendant's offense level if the offense involved ten or more items and a four-level increase if the offense involved between three hundred and six hundred images. *See* USSG § 2G2.4(b)(2) and (5)(C) (2003). However, amendments to the Guidelines that became effective in November 2004 "deleted the specific offense characteristic for possessing ten or more child pornographic items" because subsection five "essentially supercedes"

that provision and the "deletion avoids potential litigation regarding issues of 'double counting' if both specific offense characteristics were retained in the guideline." *See* USSG § App. C at 60 (Supp. Nov. 2004) (setting out Am. 664). In April 2006, the Fifth Circuit held that cumulative application of sections 2G2.4(b)(2) and (b)(5) constitutes error as a matter of law and equates to impermissible double counting. *See Gonzalez*, 445 F.3d at 817-18. It found that § 2G2.4(b)(5) superseded § 2G2.4(b)(2). *Id.* at 818. Thus, from April 30, 2003, forward "only the graduated scale of § 2G2.4(b)(5) applied." *Id.*

In this case, the PO prepared the original PSR on December 28, 2004, and objections to it were due by January 11, 2005. After counsel for movant lodged his five objections, the PO prepared the Addendum to the PSR on January 18, 2005. By the time the Court sentenced movant on February 1, 2005, counsel should have known that the 2004 amendments eliminated § 2G2.4(b)(2), and that § 2G2.4(b)(5) superseded that provision. Had counsel objected to the double counting, it is more than reasonably probable that the Court would not have increased movant's offense level under § 2G2.4(b)(2), and the resulting sentencing range would have been fifty-one to sixty-three months imprisonment.

To show prejudice from the failure to object to the double counting, movant must show a reasonable probability that the Court would have sentenced him less harshly. Because the Court sentenced movant to sixty-three months imprisonment – a sentence within the properly calculated sentencing range – there is no certainty that movant would have received a lesser sentence. In fact, for many of the reasons stated in other portions of this recommendation, the Court may have imposed the sixty-three month sentence even with knowledge that the appropriate sentencing range under the Guidelines was between fifty-one and sixty-three months imprisonment. Nevertheless,

when the Court imposes a sentence at the bottom of an erroneously calculated sentencing range, that sentence demonstrates prejudice even when the imposed sentence also falls within the accurately calculated guideline range. *Cf. United States v. Cabral-Castillo*, 35 F.3d 182, 189 (5th Cir. 1994) (finding prejudice under a plain error analysis because the imposed "sentence may well have been affected by the district court's error, particularly in light of the district court's willingness to impose the lowest sentence within the incorrect sentencing guidelines range"). A defendant may suffer prejudice within the meaning of *Strickland* by a deficiency of counsel at sentencing even when there is no certainty that he would receive a lesser sentence and the possibility remains that he would receive the same sentence as initially imposed. There must only be a reasonable probability that the Court would have imposed a lesser sentence.

Although *Cabral-Castillo* provides strong support for finding prejudice based upon the deficiency of counsel that failed to correct the double counting error in the Guidelines calculation, the advisory, post-*Booker* sentencing scheme applied by the Court could arguably impact the prejudice analysis. While it certainly is not clear cut, the sentencing transcript in this case shows a reasonable probability of a less harsh sentence had the sentencing range been accurately calculated in the first instance. First, the Court specifically recognized the Guideline range as providing the appropriate starting point for determining the length of movant's sentence. (Tr at 15.) Second, the Court specifically stated that it found nothing in the record to justify going outside the Guidelines range, although it also noted that such statement was not an easy one to make due at least in part on movant's personal and family situations. (*Id.* at 17.) Third, the Court set movant's sentence at the very bottom of the erroneously calculated range; this fact provides at least some arguable potential for a lesser sentence had the range been lower. (*Id.* at 18.) Fourth, because movant's sentence falls

at the very top of the accurately calculated Guideline range, there is ample room to impose a lesser sentence within the accurately calculated Guideline range. Finally, defendants have a less difficult time obtaining a lower sentence within a calculated Guideline range than obtaining a downward departure or a lower sentence at variance with the calculated range. Although the fact that the Court specifically recognized that the advisory sentencing scheme post-*Booker* applied to sentencing in this action certainly provides an arguable basis for distinguishing *Cabral-Castillo*, and finding no reasonable probability of a lesser sentence, the overall circumstances in this case appear to favor finding such reasonable probability.

Because movant has shown a deficiency of counsel with respect to the calculation of the sentencing range applied to him, and resulting prejudice therefrom, this claim of ineffective assistance of counsel entitles movant to relief in this § 2255 action. Consequently, the Court should vacate movant's sentence and resentence him in light of the accurately calculated Guidelines range.

### 4. *Reduction of Sentence*

Movant alleges that his attorney failed to seek a downward departure based upon (a) diminished capacity; (b) extraordinary family circumstances; (c) susceptibility to abuse in prison; (d) post-offense rehabilitation; and (e) substantial assistance. (Mem. Supp. at 9-51, 61-64.) He argues that the advisory sentencing scheme of *Booker* allows "for consideration of downward departure factors that were once discouraged or prohibited and call[s] for greater consideration of 18 U.S.C. § 3553(a)(1), history and characteristics of the defendant." (*Id.* at 9.) The Court construes the claims as encompassing both a failure to move for downward departure and a failure to seek a lower sentence "at variance" with the applicable Guideline range.

The Fifth Circuit has clearly enunciated that in the post-*Booker* sentencing regime, courts

may impose a sentence outside the applicable Guideline range by either departing from the applicable range pursuant to a recognized exception or by imposing a sentence at variance with the applicable range. *See United States v. Mejia-Huerta*, 480 F.3d 713, 721 (5th Cir. 2007) (recognizing that the courts have three sentencing options post-*Booker*, and holding that departures are different from variances), *cert. filed*, 75 U.S.L.W. 3585 (Apr. 18, 2007).

### a. Variance

As stated in the prior section, it appears clear from the sentencing transcript that the Court had no inclination to enter a non-Guidelines sentence at variance with the calculated Guideline range. When the Court expresses an accurate understanding of the post-*Booker* advisory sentencing scheme and expressly finds no basis for imposing a sentence outside the calculated Guideline range, an attorney does not render deficient representation merely by failing to specifically seek a sentence lower than the Guideline range. Movant, furthermore, has provided nothing to create a reasonable probability that the Court would have entered a lower sentence at variance with the calculated Guideline range had counsel sought such sentence. Consequently, to the extent movant's alleged deficiencies of counsel relate to a failure to seek such a lower sentence, movant is entitled to no relief in this § 2255 action.

### b. Downward Departure

In *Koon v. United States*, 518 U.S. 81 (1996), the Supreme Court set out the guiding principles for departing from the range of punishment deemed applicable by the Guidelines. The sentencing courts should consider four questions: (1) "What features of this case, potentially, take it outside the Guidelines' heartland and make of it a special, or unusual, case?"; (2) "Has the Commission forbidden departures based on those features?"; (3) "If not, has the Commission encouraged

departures based on those features?"; and (4) "If not, has the Commission discouraged departures based on those features?" 518 U.S. at 95 (citation and internal quotation marks omitted). In light of answers to these questions, the sentencing courts proceed as follows:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Id.* at 95-96 (citations omitted).

In this instance, movant identifies five features of this case that potentially take it outside the Guidelines' heartland – diminished capacity, extraordinary family circumstances, susceptibility to abuse in prison, post-offense rehabilitation, and substantial assistance. For offenses falling under Chapter 110 of Title 18 of the United States Code, including movant's child pornography offense, the Sentencing Commission has specifically forbidden departures for diminished capacity and family ties and responsibilities. *See* USSG §§ 5H1.6, 5K2.13, p.s. (2003).[6] Additionally, for child crimes

---

[6] Movant contends that § 5H1.6 does not prohibit a downward departure based on family ties and responsibilities because it merely states that such factors are "not relevant" in the context of his offense. (*See* Reply at 8.) However, in general, "[f]amily responsibilities are a discouraged factor under the Guidelines." *United States v. Jackson*, 254 Fed. App'x 434, 454 (5th Cir. 2007) (citing the first paragraph of § 5H1.6 ("Family ties and responsibilities are not ordinarily relevant in determining whether a departure is warranted.")). Because the first paragraph of § 5H1.6 discourages downward departures based on family responsibilities, the second paragraph added by the Protect Act effective April 30, 2003, is unnecessary if it also merely discouraged the factor in the context of specific offenses. When applicable, the second paragraph of § 5H1.6 forbids a downward departure for family circumstances.

and sexual offenses, including the instant child pornography offense,[7] the Commission has specifically forbidden any departure that has not been "affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements." *See* USSG § 5K2.0(b)(1) (2003).[8] Because departures for post-offense rehabilitation and susceptibility to abuse are not affirmatively and specifically identified as a permissible basis for a downward departure in the Guidelines, such departures in movant's case are forbidden by § 5K2.0(b)(1). Consequently, the sentencing court could not downwardly depart from the Guidelines on any of these purported bases, and counsel had no basis to move for a departure based upon them. Without a deficiency of counsel, these claims necessarily fail.

Even if the Sentencing Commission had not specifically precluded downward departures based upon movant's alleged diminished capacity, family circumstances, post-offense rehabilitation, and susceptibility to abuse, the alleged ineffective assistance claims would fail because movant has not affirmatively shown that he was prejudiced by his attorney's failure to seek such departures. The Court found no reason to impose a sentence outside the calculated Guidelines range even though it recognized movant's family circumstances and concern about abuse in prison and knew about his sex addiction, post-offense rehabilitation efforts, and exposures to various emotional traumas. Although movant's motion to vacate and supporting memorandum may provide new detail or addi-

---

[7] Because movant's child pornography offense falls under Chapter 110 of Title 18 of the United States Code, it constitutes a child crime or sexual offense within the meaning of § 5K2.0. *See* USSG § 5K2.0 comment. (n.4).

[8] Movant contends that § 5K2.0(b) no longer applies in light of *Booker*. (*See* Reply at 8.) The Fifth Circuit has specifically "assume[d] that the mandatory aspects of § 3553(b)(2) are now advisory only." *United States v. Jones*, 444 F.3d 430, 441 n.54 (5th Cir.), *cert. denied*, 548 U.S. 915 (2006). Section 5K2.0(b) is premised upon § 3553(b)(2)(A)(ii). Because the Court is only considering § 5K2.0(b) in the context of obtaining a departure from the calculated Guidelines range, it properly considers the mandatory aspects of that section. Of course, the mandatory aspects have no applicability in the context of imposing a non-Guideline sentence at variance from the calculated sentencing range.

tional traumas that movant has experienced, he provides nothing to create a reasonable probability that the Court would have imposed a lesser sentence based upon diminished capacity, family circumstances, rehabilitation efforts, or susceptibility to abuse even if it were not prohibited from doing so by the Guidelines themselves.[9]

With respect to the fifth feature of this case that potentially takes it outside the Guidelines' heartland – alleged substantial assistance – the Sentencing Commission has specifically recognized a potential downward departure from the applicable sentencing range. *See* USSG § 5K1.1 (2003). However, consideration of such departure arises "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." *Id.* Section 5K1.1 does not contemplate a motion from defense counsel. *See id.* In this instance, moreover, the government specifically stated that it was not moving for a § 5k1.1 departure because movant's level of assistance did not rise to the level of substantial assistance. (Tr. at 14.) Counsel was not deficient in failing to move for a departure based upon substantial assistance. Movant has also not shown a reasonable probability of a less harsh sentence had counsel made the requested departure because he provides nothing to show that had counsel requested a departure under § 5K1.1, the government would have changed its position or that the Court would have downwardly departed with or without a motion by the government. Nor has he provided anything to show that his assistance reached the level of substantial assistance. Additionally, although he makes several arguments regarding the government's refuse to file a motion for departure under § 5K1.1 (*see* Mem. Supp. at 61-64), he provides nothing to show that

---

[9] Of course, upon resentencing the District Court certainly has discretion to consider evidence and arguments for determining a proper sentence for movant in light of the accurately calculated sentencing range.

the refusal was made in bad faith or for any impermissible purpose.

For all of these reasons, the failures of counsel to seek a downward departure from the calculated Guideline range entitle movant to no relief in this § 2255 action.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **GRANT** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 based upon a deficiency of counsel that prejudiced movant by increasing the calculated sentencing range through impermissible double counting. The Court should vacate movant's sentence and resentence him in light of the accurately calculated Guidelines range. It should otherwise **DENY** the motion.

**SIGNED** this 25th day of **June, 2008.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE